IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ZACHARY CHESSER, # 76715-083, *also known as* Abu Talhah,  Plaintiff, | ) ) ) ) ) ) |
| vs. | ) )  Case No. 12-cv-01198-JPG |
| J. S. WALTON, *et al.*,  Defendants. | ) ) ) ) ) |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, an inmate in the United States Penitentiary in Marion ("Marion"), brings this action *pro se* for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Plaintiff was previously granted leave to proceed *in forma pauperis* (Doc. 10), and he has tendered his initial partial filing fee as ordered. Plaintiff is serving a twenty-five-year sentence for communicating threats, soliciting others to threaten violence, and providing material support to terrorists. His claims arose during his incarceration in Marion's communications management unit[1] ("CMU").

Plaintiff filed his original complaint in this matter on November 21, 2012 (Doc. 1). While his complaint was under review, Plaintiff filed a number of other motions, including a motion for leave to amend the complaint (Doc. 17). The Court granted the motion on March 19, 2013 (Doc. 18). Plaintiff followed with a motion for reconsideration on March 29, 2013, in which he asked the Court to reinstate Defendant Basler as a party to this

---

[1] The CMU will be described according to Plaintiff's amended complaint and discussed in more detail below.

action (Doc. 20). As set forth herein, the Court is granting this motion as well. Accordingly, this threshold order addresses Plaintiff's amended complaint (Doc. 19), as modified by Plaintiff's motion for reconsideration (Doc. 20). Because the amended complaint supersedes the original complaint and renders it void, this threshold order addresses only those allegations set forth in Plaintiff's amended complaint (Doc. 19). *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004) (citing *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961)).

In the amended complaint, Plaintiff alleges that forty-one defendants infringed on his constitutional rights by "play[ing] a role in crafting or enforcing a ban on Islamic congregational prayer" in Marion's CMU (Doc. 19, p. 6). Plaintiff asserts claims against the United States, its attorney general,[2] numerous past[3] and present[4] Federal Bureau of Prisons ("BOP") officials, and numerous past[5] and present[6] Marion officials. He alleges that the ban on Islamic congregational prayer violates his rights under the First Amendment, the Fifth Amendment, and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq*. (Doc. 19, pp. 2, 13-14). In addition, he raises conspiracy claims under 42 U.S.C. §§ 1985 and 1986, a state tort claim for intentional infliction of emotional distress, and a retaliation claim (Doc. 19, p. 2). Plaintiff seeks

---

[2] Eric H. Holder, Jr. is the current Attorney General of the United States and is a defendant in this action.
[3] According to the amended complaint, the following defendants are *former* BOP officials: Harley Lappin (director); Thomas Kane (acting director); Michael Nalley (regional director, North Central Regional Office); and Amber Nelson (acting regional director, North Central Regional Office).
[4] According to the amended complaint, the following defendants are *current* BOP officials: Charles Samuels, Jr. (director); D. Scott Dodrill (assistant director); Paul M. Laird (regional director, North Central Regional Office); and Keith Harrison (regional chaplaincy administrator, North Central Regional Office).
[5] According to the amended complaint, the following defendants are *former* Marion officials: Lisa Hollingsworth and Wendy Roal (wardens); John Parent and Steve Julian (associate wardens); Paul Kelly (CMU unit manager); and Lawrence Howard (captain).
[6] According to the amended complaint, the following defendants are *current* Marion officials: J.S. Walton (warden); Darren Sproul and Calvin Johnson (associate wardens); Robert Roloff (supervisory chaplain); Steven Cardona (CMU unit manager); Milton Neumann (CMU case manager); Henry Rivas (CMU intelligence research specialist); Jeffrey Baney (executive assistant/administrative remedy coordinator); G. Fozzard, Webb, T. Smith, Basler, Hampton, Falimer, Lennon, and H. Clark (correctional officers); Lockridge, K. Wells, Malcolm, and Van Dyver (lieutenants); and April Cruitt, T. Capaldo, Stephen Colt, J. Simmons, and Leslie Smith (intelligence analysts).

declaratory relief, as well as a preliminary and permanent injunction requiring Defendants to allow Muslims within the CMU to engage in group prayer five times each day (Doc. 19, p. 14). He seeks compensatory and punitive damages.

Specifically, Plaintiff alleges that he is a Muslim and is currently housed in Marion's CMU (Doc. 19, pp. 2, 9). The CMU houses inmates who are "deemed to require additional monitoring of their communication" (Doc. 19, p. 7). The unit is subject to constant audio and video surveillance (Doc. 19, p. 8). Although inmates are housed in individual cells, they are allowed out each day from 5:45 a.m. until 9:45 p.m.[7] While out of their cells, prisoners in the CMU may engage in a variety of group activities, which include watching television, playing cards, playing sports, and conversing. They can even discuss and defend criminal behavior and radical groups, like the Taliban or Al-Qaeda (Doc. 19, p. 7).

As an adherent to the Hanbali school of Islam, Plaintiff believes that he is required to pray five times each day for approximately five minutes each time (Doc. 19, p. 8). Plaintiff also sincerely believes that these prayers must be offered in congregation with other Muslims (Doc. 19, pp. 7-8). According to current BOP policy,[8] Islamic group prayer in the CMU is effectively prohibited, with the exception of two hours each Friday and throughout the Islamic holy month of Ramadan[9] (Doc. 19, pp. 7, 9, 11).

---

[7] Prisoners must return to their cells during this general timeframe for forty-five minutes each weekday and for an additional hour on weekends and federal holidays (Doc. 19, p. 7).
[8] Plaintiff does not quote, summarize, or paraphrase the text of the policy at issue in the amended complaint or any of the attached exhibits. Although several different policies are mentioned and even quoted by BOP employees in administrative appeals paperwork that is attached to the amended complaint, Plaintiff does not cite the policies, refer to the exhibits, or incorporate them into the allegations of the amended complaint. It is therefore unclear what policy Plaintiff contests or who created the policy.
[9] Plaintiff alleges that no "incident" has resulted from these approximately 250 Islamic group prayers that are allowed during the year (Doc. 19, p. 10). Plaintiff does point out that Muslim inmates cannot synchronize their movements behind an Imam even when praying simultaneously in the chapel (Doc. 19, p. 11).

Defendants enforce the ban by issuing incident reports to Muslims under two sets of circumstances (Doc. 19, p. 10).  When Defendants actually catch Muslims engaged in group prayer, they issue incident reports for participation in an "unauthorized gathering."  When Defendants strongly suspect that Muslims are engaging in group prayer but cannot prove it, they issue incident reports for being in an "unauthorized location."

The only inmates who have been given incident reports for being in "unauthorized gatherings" are Muslims who are caught praying together or suspected of doing so (Doc. 19, p. 10).  The ban does not apply to CMU prisoners of other faith groups, such as Jews or Christians.  Non-Muslim CMU inmates regularly gather in groups to pray together or to hold religious services with one another.

The ban imposed by Defendants substantially burdens Plaintiff's sincerely held religious beliefs and practices (Doc. 19, p. 13).   Plaintiff was disciplined on four separate occasions for engaging in congregate prayer with other Muslims or for being suspected of this activity (Doc. 19, p. 11).  Twice, he was written incident reports for being in an "unauthorized gathering."  On two other occasions, he was issued incident reports for both rule violations but was ultimately found guilty only of being in an "unauthorized location" due to a lack of evidence that he was actually praying in a group.

Plaintiff sets forth specific allegations against only three of the forty-one defendants, including Defendants Roloff, Cardona, and Neumann.  Plaintiff alleges that Defendant Roloff allows Jewish inmates to pray in congregation (Doc. 19, p. 10).  Plaintiff alleges that Defendants Cardona and Neumann threatened him with permanent placement in isolation if he sent a religious email he was composing and then moved him to the worst cell in the unit after suspecting him of participating in group prayer (Doc. 19, pp. 12-13).  Plaintiff prepared an email

4

offering a "dramatic narrative of his efforts to pray in a group" and stored it in his "drafts" folder.  On or around June 5, 2012, Defendants Cardona and Neumann called Plaintiff into their office and threatened him with permanent placement in isolation if he sent the email.  In fear of retaliation, Plaintiff agreed to delete the email.  After Defendant Cardona observed Plaintiff praying in his cell at the same time other Muslims were doing the same, Defendant Cardona moved Plaintiff from his cell near other Muslims to "arguably the worst cell in the entire unit," i.e., the one that was closest to the guard's office (Doc. 19, p. 13).

Plaintiff alleges that the ban on group prayer substantially burdens his religious practices.  It is not reasonably related to a neutral government interest, nor would lifting the ban seriously harm prison operations.  Plaintiff has no alternative means of exercising his sincerely held religious beliefs.  The ban does not represent the least restrictive means of furthering a compelling government interest.  It is the result of a conspiracy by Defendants to deprive Plaintiff of his rights (Doc. 19, p. 14).  Plaintiff alleges that, as such, the ban violates the Free Exercise Clause and Establishment Clause of the First Amendment.  It violates RFRA.  It also violates his equal protection rights under the Fifth Amendment.  He raises a conspiracy claim, a retaliation claim, and a state law tort claim for intentional infliction of emotional distress.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated cognizable federal claims under the First Amendment (Count 1) and RFRA (Count 2) and a state tort claim for intentional infliction of emotional distress (Count 3) against Defendants Holder, Samuels, Jr., and Walton for unlawfully restricting Plaintiff's right to engage in group

prayer with other Muslims.[10] Plaintiff has also asserted a colorable equal protection claim under the Fifth Amendment (Count 4) against Defendants Holder, Samuels, Walton, and Roloff. Finally, Plaintiff has articulated an actionable retaliation claim against Defendants Cardona and Neumann (Count 5).

These claims fail against all other defendants. Because vicarious liability is inapplicable to *Bivens* actions, an individual cannot be held liable unless the individual caused or participated in an alleged constitutional deprivation. *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1240 (7th Cir. 1994); *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986). Plaintiff "must plead that each Government-official defendant, through the official's own actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Plaintiff's amended complaint contains very few allegations pertaining to specific actions taken by any particular defendants. Even construing the amended complaint liberally in Plaintiff's favor as the Court must do at this stage, Plaintiff has simply failed to allege sufficient facts to demonstrate personal participation in a constitutional deprivation by any of the remaining defendants.

Plaintiff's conspiracy claim against all defendants also fails (Count 6). Plaintiff asserts that Defendants, "[w]hether through crafting or enforcing the ban" on Muslim group prayer, "conspired to deprive Plaintiff of his rights" (Doc. 19, p. 14). Under the intracorporate conspiracy doctrine, a § 1985 conspiracy claim "cannot exist solely between members of the same entity." *Payton v. Rush Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999). Plaintiff has named as defendants members of the same entity, the BOP. The BOP is an agency of the United States Department of Justice, headed by Defendant Holder. Therefore, the defendants cannot be sued for conspiracy under §§ 1985 or 1986. *See id. See also Wright v. Ill.*

---

[10] Because Plaintiff is challenging the policy that restricts his ability to engage in group prayer with other Muslims, the Court is allowing him to proceed against those defendants who are policy makers and/or those defendants who will carry out the terms of any injunction issued in this matter.

*Dep't of Children and Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994).[11] Accordingly, Plaintiff's conspiracy claims under 42 U.S.C. §§ 1985 and 1986 shall be dismissed without prejudice.

According to the above holdings, the Court shall dismiss without prejudice Defendants Hollingsworth, Roal, Sproul, Johnson, Julian, Parent, Kelly, Rivas, Howard, Baney, Fozzard, Webb, T. Smith, Basler, Hampton, Falimer, Lennon, Clark, Lockridge, Wells, Malcolm, Van Dyver, Cruitt, Capaldo, Colt, Simmons, L. Smith, Nalley, Nelson, Laird, Harrison, Lappin, Kane, Dodrill, and the United States without prejudice. Plaintiff failed to allege sufficient facts establishing that these defendants had any personal involvement in Plaintiff's constitutional deprivations.

**Pending Motions**

Plaintiff's motion for appointment of counsel (Doc. 4) shall be **REFERRED** to United States Magistrate Judge Philip M. Frazier for further consideration.

Plaintiff's motions for preliminary and permanent injunctive relief (Docs. 1, 2, 16, 21) shall also be **REFERRED** to United States Magistrate Judge Frazier for prompt consideration.

Plaintiff's motion to order court to require BOP to provide current addresses of all defendants to effect proper service on them (Doc. 9) is **DENIED**.

Plaintiff's motion for miscellaneous relief (Doc. 15), in which Plaintiff asks the Court to take judicial notice of the recent decision in *Lindh v. Warden*, Civil No. 09-215-JMS, 2013 WL 139699 (S.D. Ind. Jan. 11, 2013), is **GRANTED**. The Court has reviewed this decision and is taking it under consideration in the context of this matter.

Plaintiff's motion for reconsideration (Doc. 20), in which he seeks to reinstate Defendant

---

[11] While *Wright* focused on corporate managers, nothing in its reasoning precludes application of this doctrine to supervisors and subordinates in a government entity, as long as all are working in the entity's interest. *Id.* at 633.

7

Basler as a party to this action, is **GRANTED**. However, as noted above, Defendant Basler shall be dismissed from the action without prejudice.

Plaintiff's motion for copy of the docket sheet (Doc. 23) is **GRANTED.** As a general rule, the District Clerk will mail paper copies of any document to a party only upon prepayment of the required fee. According to 28 U.S.C. § 1914(b), "[t]he clerk shall collect from the parties such additional fees only as are prescribed by the Judicial Conference of the United States." The Judicial Conference Schedule of Fees section (4) provides that a fee of $.50 per page shall apply for reproducing any record or paper. The Clerk is **DIRECTED** to mail Plaintiff a copy of the docket sheet in this case. Should Plaintiff desire copies of any documents from the court file, he should request the document(s) by number and send the required prepayment.

**Disposition**

**COUNT 6** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

The following **DEFENDANTS** are **DISMISSED** from this action without prejudice: **HOLLINGSWORTH, ROAL, SPROUL, JOHNSON, JULIAN, PARENT, KELLY, RIVAS, HOWARD, BANEY, FOZZARD, WEBB, T. SMITH, BASLER, HAMPTON, FALIMER, LENNON, CLARK, LOCKRIDGE, WELLS, MALCOM, VAN DYVER, CRUITT, CAPALDO, COLT, SIMMONS, L. SMITH, NALLEY, NELSON, LAIRD, HARRISON, LAPPIN, KANE, DODRILL,** and **UNITED STATES**.

As to **COUNTS 1**, **2**, **3, 4** and **5**, the Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **HOLDER, SAMUELS, JR., WALTON, CARDONA, NEUMANN** and **ROLOFF**; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants

**HOLDER, SAMUELS, JR., WALTON, CARDONA, NEUMANN** and **ROLOFF** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

It is **FURTHER ORDERED** that Plaintiff shall serve upon Defendants, or if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to each defendant or counsel. Any paper received by a district judge or a magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for further pre-trial proceedings, which shall include a determination on the pending motion for appointment of counsel (Doc. 4) and motions for preliminary and permanent injunctive relief (Docs. 1, 2, 16, 21).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's motions for injunctive relief (Docs. 1, 2, 16, and 21) are hereby **REFERRED** to United States Magistrate Judge Frazier for an evidentiary hearing and issuance of a report and recommendation.  The period for filing any objections to Judge Frazier's report and recommendation shall not exceed **14 days** from the date of the report.  Judge Frazier shall set an evidentiary hearing as soon as practicable, in light of the time necessary to effect service of summons and for receipt of the Defendants' responses to the motion for injunctive relief.  Any motions filed after the date of this Order that relate to the request for injunctive relief or that seek leave to amend the complaint are also hereby **REFERRED** to Judge Frazier.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED:  May 10, 2013**

                                                         s/J. Phil Gilbert
                                                        **U.S. District Judge**