UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ZACHARY CHESSER,

    Plaintiff,

    v.

J.S. WALTON, *et al.*,

    Defendants.

Case No. 12-cv-1198-JPG-RJD

## MEMORANDUM AND ORDER

    This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 236) of now-retired Magistrate Judge Philip M. Frazier recommending that the Court deny the motion for partial summary judgment filed by plaintiff Zachary Chesser (Doc. 131) and grant in part and deny in part the motion for summary judgment filed by defendants Steven V. Cardona, Eric Holder Jr., Milton Neumann, Robert Roloff, Charles Samuels Jr. and J. S. Walton (Doc. 127). The defendants (Doc. 237) and Chesser (Doc. 242) have filed objections to the Report, and Chesser has responded to the defendants' objections (Doc. 242).

    The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

### I.    Background

    In this lawsuit, Chesser complains about his conditions of confinement in the Communication Management Unit ("CMU") at the United States Penitentiary at Marion, Illinois ("USP-Marion") that resulted from a prison policy, Program Statement 5360.09 § 7(a), restricting

his participation in Muslim group worship services. He was incarcerated in the USP-Marion CMU from May 2, 2011, to June 2, 2014. Specifically, he complains that he was not permitted to have congregate prayer with other Muslim inmates five times a day. Chesser is now housed at the Administrative Maximum Security Penitentiary in Florence, Colorado ("ADX-Florence"). The following claims remain in this case:

> Count 1: a claim under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971), for violation of the First Amendment free exercise clause and establishment clause against defendants Holder, Samuels, and Walton;
>
> Count 2: a claim for violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1, against defendants Holder, Samuels, and Walton;
>
> Count 3: a state law claim for intentional infliction of emotional distress against defendants Holder, Samuels, and Walton;
>
> Count 4: a *Bivens* claim for violation of the equal protection guarantees in the Fifth Amendment due process clause against defendants Holder, Samuels, Walton and Roloff; and
>
> Count 5: a *Bivens* claim for retaliation in violation of the First Amendment against defendants Cardona and Neumann.

Chesser asserts in various filings that this case includes a challenge to the nationwide application of the congregate worship policy; he is wrong. This *Bivens* case is a challenge to the conditions of confinement *Chesser* faced *in the CMU at USP-Marion*. A broad challenge to the policy itself can and should be brought under the Administrative Procedures Act, 5 U.S.C. § 706(2)(B), the vehicle for challenging unconstitutional agency action. Chesser has filed no such claim.[1] Chesser's repeated efforts to expand this case through his descriptions of the issues

---

[1] A challenge to the policy itself would necessarily mean different things and require a different analysis when implemented at different prisons. Even assuming that the policy substantially burdens the exercise of religion, whether the policy is justified would depend on the differing safety, security and operational needs of a particular institution, and even of particular units within an institution. For example, the governmental interests in the CMU at USP-Marion

in his prolix filings are recurring problems that only serve to complicate consideration of the real issues. The Court confines its analysis to the actual issues raised in Chesser's Amended Complaint as identified in the Court's merits review order (Doc. 24).

**II. Analysis**

    A.    <u>Count 1: Free Exercise Clause</u>

Chesser asserts in Count 1 that Holder, Samuels, and Walton were responsible for making and enforcing policy that limited congregate prayer for Chesser and his fellow Muslims to once a week instead of the five daily group prayers required by Chesser's religious beliefs. He claims this policy violated the First Amendment free exercise clause because it substantially burdened the exercise of his religion without a legitimate governmental interest. *See Thompson v. Holm*, 809 F.3d 376, 379-80 (7th Cir. 2016).

Magistrate Judge Frazier found that the defendants are entitled to qualified immunity on this aspect of Count 1 because a *Bivens* remedy would likely not be recognized for such a First Amendment violation and because the law was not clearly established that Chesser had a right to five daily group prayers in the circumstances presented. He noted that there are cases holding that prisons need not allow inmates to conduct their own religious services, but those cases did not establish a right to group prayer in prison.

In his objection, Chesser agrees that it was not clearly established that he had a right under the free exercise clause to congregate prayer. Instead, he argues that it was clearly established that non-neutral policies are unconstitutional, and he argues that this policy is not neutral because

---

necessarily differ from the governmental interests at ADX-Florence because they are two different prisons designed to house different kinds of inmates who pose different safety and security risks. The challenge at bar is to the application of the congregate worship restrictions to Chesser in the CMU at USP-Marion, not restrictions that may be imposed and enforced against others at ADX-Florence or any other Bureau of Prisons facility (*see* Doc. 99).

3

it burdens religious but not non-religious groups.[2]

The Court has reviewed the matter *de novo* and agrees with Magistrate Judge Frazier for the reasons he states in the Report. Chesser has not pointed to any case from which the defendants should have known that their conduct in enforcing the congregate prayer restriction in prison would violate Chesser's First Amendment right to freely exercise his religion because it placed a substantial burden on his religious exercise without a legitimate governmental interest.

B.  Count 1: Establishment Clause

With respect to Chesser's First Amendment establishment clause claim in Count 1, Magistrate Judge Frazier found the defendants fail to discuss this aspect of Count 1 in their summary judgment motion, and therefore fail to establish their entitlement to judgment as a matter of law. He further found that, although Chesser discusses this claim in his motion for summary judgment, he does not show the absence of a genuine issue of material fact so as to justify summary judgment.

As a preliminary matter, Chesser's objections seek to modify his claims asserting that the defendants unconstitutionally treated him differently than those of other religious groups by allowing them, but not him, to pray in a group with other similar religious adherents in contravention of prison policy. Am. Compl. ¶¶ 75, 82, 83 (Doc. 19). In his objection, he attempts to recast his claim to assert that the defendants unconstitutionally treated religious groups differently than non-religious groups by allowing non-religious groups to meet in a group without restrictions but allowing religious groups to meet only once a week. He then claims Magistrate Judge Frazier erred in not recommending summary judgment be entered in his favor on this claim.

---

[2] The latter argument is aimed at a theory of the case that Chesser attempted unsuccessfully to add in a Second Amended Complaint. The disparate treatment of religious and non-religious groups is not in issue in this case, as explained more fully in connection with Chesser's establishment clause claim below.

However, this was not the claim Chesser pled in the Amended Complaint (Doc. 19), and Magistrate Judge Frazier declined to allow Chesser add it to this case in a Second Amended Complaint (Doc. 182). Such a claim is not part of this case. The Court will limit its discussion to only those claims pled in the Amended Complaint (Doc. 19) and identified in the Court's merits review order under 28 U.S.C. § 1915A (Doc. 24). If Chesser wishes to challenge the prison's policy treating religious and non-religious groups differently in their restrictions on group meetings, he may do so in another lawsuit after exhausting his administrative remedies.

In their objections, the defendants urge the Court to consider the qualified immunity arguments in its motion as to Count 1, which it directs toward Chesser's First Amendment claims generally (Doc. 24). The defendants also advance a substantive argument why they did not violate the establishment clause and argue that to find otherwise would be inconsistent with the Report's recommendation to dispose of Chesser's equal protection claim based on the same conduct. They note that, as argued in their brief with respect to Count 4 and as found in Magistrate Judge Frazier's discussion of Count 4, there is no evidence from which a reasonable jury could find Holder, Samuels or Walton was personally involved in the decisions Chesser claims advance one religion over his religion – front-line decisions by personnel in the CMU to enforce or decline to enforce the ban on congregate prayer in any particular instance.

A rule or decision violates the establishment clause "if (1) it has no secular purpose, (2) its primary effect advances or inhibits religion, or (3) it fosters an excessive entanglement with religion." *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005) (citing *Lemon v. Kurtzman,* 403 U.S. 602, 612-13 (1971)). The establishment clause also "prohibits the government from favoring one religion over another without a legitimate secular reason." *Id.* However, as with all *Bivens* claims, a defendant is only liable for his own misconduct and therefore must be personally involved in making the decision that violates the establishment

5

clause. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003).

The Court has reviewed this part of the Report *de novo* and believes the defendants' motion is broad enough to be construed as seeking qualified immunity on Chesser's establishment clause claim as well as his free exercise claim. The defendants argue that it was not clearly established at the time Chesser was at the USP-Marion CMU that there was a cognizable cause of action under *Bivens* for First Amendment violations or that prohibiting Chesser from daily praying with others as he wished violated the First Amendment. They also note that they relied on BOP regulations in restricting group prayer.

Once a defendant raises the issue of qualified immunity, the burden falls to the plaintiff to show the defendant violated clearly established law, and Chesser has not carried this burden with respect to an establishment clause violation.[3] Chesser cites a number of cases upholding a prisoner's right to a reasonable opportunity to pursue his faith, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), or to a prisoner's right not to be purposefully discriminated against because of his faith, *see, e.g., Iqbal*, 556 U.S. at 676-77; *Cooper v. Pate*, 378 U.S. 546, 546 (1964) (*per curiam*), but none of those cases deal with a congregate worship policy restricting inmates of all faith groups to one staff-supervised congregate meeting of their faith group per week or an analogous policy that would have put the defendants on notice that their conduct was unconstitutional. Nor can the Court find in its own independent research any Supreme Court or Seventh Circuit caselaw clearly establishing that such a policy favors one religion over another in violation of the

---

[3] Chesser claims in his response to the defendants' objections that he did not have a fair opportunity to counter the defendants' qualified immunity claim as to his establishment clause claim. However, Chesser demonstrated in his response that he knew the defendants were seeking qualified immunity for his complaints that the defendants favored other religions over Islam; he devoted an entire section of his response to the prohibition of religious discrimination, including several paragraphs explicitly discussing whether establishment clause law was clearly established. Pl.'s Resp. 10-14 (Doc. 180).

establishment clause or is in any other way unconstitutional. It is true that to show a law is clearly established, there need not be a case with identical facts, but the unlawfulness must be apparent from the prior caselaw. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (finding Eighth Amendment law clearly established even in novel factual situations). Chesser has not carried his burden of pointing to any caselaw making it apparent, even in an analogous situation, that enforcing the policy on group worship violated the establishment clause or was otherwise unconstitutional.

To the extent Chesser complains not of the effect of the rule itself but of its selective enforcement – thus favoring other religions – this theory suffers from the same problems as Count 4, discussed below. While there is some evidence the defendants were aware that congregate worship was occurring in violation of the policy, there is no evidence from which a reasonable jury could find Holder, Samuels or Walton were personally involved in any selective enforcement against Chesser.

For these reasons, the defendants are entitled to summary judgment on Chesser's establishment clause claim in Count 1. The Court will reject the Report to the extent it recommends differently.

C. <u>Count 2: Religious Freedom Restoration Act</u>

In Count 2, Chesser claims that the defendants' conduct regarding restricting congregate worship violated RFRA because it substantially burdened his exercise of religion without being the least restrictive means of furthering a compelling governmental interest. *See* 42 U.S.C. § 2000bb-1. In the Report, Magistrate Judge Frazier found that Chesser's claim under RFRA, which provides only injunctive relief, is moot because Chesser has not shown he is likely to be retransferred to the CMU at USP-Marion from his current placement at ADX-Florence.

In his objection, Chesser argues his claims are not moot by his transfer to ADX-Florence

because the policy to which he objects is a nationwide Bureau of Prisons policy that still applies to him, that he suffers collateral harm from those policies in the form of his transfer to ADX-Florence, that his transfer is within the scope of his complaint, and that he is likely to return to the USP-Marion CMU.[4] He argues that the first of these three arguments must be accepted because of a recent ruling in a case he has pending in the District of Colorado, *Chesser v. Director of the Bureau of Prisons*, Case No. 1:15-cv-1939.

The Court has reviewed the matter *de novo* and finds that Chesser's RFRA claims are, in fact, moot. Regardless of the ruling from the District of Colorado, which was not a final ruling, the fact remains that Chesser is no longer in the USP-Marion CMU and can no longer be provided relief from the conditions of confinement there. The Court further finds, as it has before in this case (Doc. 99), that while it is possible Chesser could return to the USP-Marion CMU, he has not shown it is likely that he will be retransferred to the USP-Marion CMU to face the same conditions.

    D.    <u>Count 3: Intentional Infliction of Emotional Distress</u>

Magistrate Judge Frazier found that this state law tort action must be brought under the Federal Tort Claims Act ("FTCA") rather than state law. The only proper defendant in an FTCA claim based on the actions of a federal employee acting within the scope of his employment is the United States. *See* 28 U.S.C. § 2679(d). Additionally, there is a requirement to exhaust administrative remedies before filing suit. *See* 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993), which Chesser has not done. Magistrate Judge Frazier therefore recommends the United States be substituted as the only defendant in Count 3 and that Count 3 be

---

[4] Again, Chesser makes arguments not relevant to the disposition of claims in this case, which do *not* include a general challenge to the constitutionality of the congregate worship policy, a challenge to his transfer to ADX-Florence, or a challenge to his conditions of confinement at ADX-Florence.

dismissed without prejudice for failure to exhaust administrative remedies.

No party objects to this part of the Report, and the Report is not clearly erroneous in this regard, so the Court will adopt it.

E. Count 4: Fifth Amendment Equal Protection

Magistrate Judge Frazier found that there is sufficient evidence from which a jury could find Chesser was targeted for discipline for participating in group prayer because of his religion, Islam. However, the evidence is insufficient to show the defendants in this count – Holder, Samuels, Walton and Roloff – were personally involved in making a decision to purposefully target Chesser because of his religion. Therefore, Magistrate Judge Frazier recommends granting judgment for the defendants on Count 4.

In his objection, Chesser argues the defendants are being sued as policy-makers, not because of their personal involvement with enforcement decisions. He further concedes that he cannot succeed on his claim against Holder.

The Court has reviewed the matter *de novo* and again finds that Chesser's has not pointed to evidence from which a reasonable jury could find the defendants were personally involved in implementing the policy in a discriminatory way.

F. Count 5: First Amendment Retaliation

Magistrate Judge Frazier found that there are genuine issues of material fact with respect to Chesser's claim that Cardona and Neumann retaliated against him for preparing an email critical of USP-Marion's efforts to prevent him from praying in a group by threatening him with permanent placement in isolation.[5] Consequently, Magistrate Judge Frazier recommended no

---

[5] Magistrate Judge Frazier also addressed Chesser's claim that he was placed in an undesirable cell in retaliation for praying in a group. In his response, Chesser states "he does not want to include this in this claim and has attempted to remove it through amendment." Pl.'s Resp. 28. The Court construes this as an abandonment of this theory of proving the retaliation claim and

party be granted summary judgment on Count 5.

In their objections, the defendants fault Magistrate Judge Frazier for not analyzing in writing the remarks Chesser claims defendants Cardona and Roloff made to him that could support an inference of retaliation and for not acknowledging that Cardona and Roloff had no ability to carry out the alleged threats.

The Court is puzzled by the defendants' objection. In their motion for summary judgment, they acknowledge Chesser claims they threatened to permanently transfer him to isolation for drafting an email describing some of his experiences in prison. It is self-evident that a threat to transfer Chesser to isolation for drafting an email is a threat and, as Magistrate Judge Frazier concluded, "would reasonably support a finding of retaliation for protected speech." Whether the defendants actually made such statements and whether such a threat would likely deter future First Amendment activity, *see Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009), are questions for a jury to decide.

In Chesser's objections, he disputes that there is a genuine issue of material fact. The Court has reviewed the evidence in connection with the summary judgment motions and finds that there is evidence from which a jury could either find or not find the defendants retaliated against Chesser in violation of the First Amendment. Thus, there are genuine issues of material fact for decision by jury.

### III.   Conclusion

For the foregoing reasons, the Court:

- **REJECTS in part** and **ADOPTS** the Report (Doc. 236) as **MODIFIED** by this order[6];

- **OVERRULES** Chesser's objections (Doc. 242);

---

will therefore dismiss it for lack of prosecution.

[6]   The Court also notes an incorrect citation on the bottom of page 3 of the Report. The Report cites to 28 U.S.C. § 548.10, but that cite should be to 28 C.F.R. § 548.10.

- **OVERRULES in part** the defendants' objections (Doc. 237);

- **ORDERS** that the United States be added as the defendant in Count 3 and that Count 3 against defendants Holder, Samuels and Walton be **DISMISSED with prejudice**;

- **GRANTS in part** and **DENIES in part** the defendants' motion for summary judgment (Doc. 127). The motion is granted to the extent it seeks summary judgment on Counts 1, 2, 3 and 4;

- **DISMISSES** Counts 1 and 4 **with prejudice**;

- **DISMISSES** Counts 2 and 3 (against the United States) **without prejudice**;

- **DENIES** Chesser's motion for partial summary judgment (Doc. 131);

- **DENIES** Chesser's motions *in limine* (Docs. 214 & 215). Counsel for Chesser will prepare and present the exhibits needed to support his case at trial; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

Count 5 against Cardona and Neumann remain for trial. The Court further **ORDERS** the parties to submit a proposed final pretrial order to Magistrate Judge Reona J. Daly's chambers on or before November 30, 2016. Magistrate Judge Daly will then hold a final pretrial conference at which the parties should be prepared to discuss the use of videoconferencing for the trial of this case and coordination of this trial with the trial of *Chesser v. Rivas*, 13-cv-456-JPG-RJD, to minimize transportation needs and security risks. The current final pretrial conference and trial dates before Judge Gilbert are **VACATED** and will be reset following Magistrate Judge Daly's final pretrial conference.

**IT IS SO ORDERED.**
**DATED: November 2, 2016**

                                                s/ J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **DISTRICT JUDGE**